JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JANE DOE (a fictitious designation whose initials are S.M.), MARY MOE (a fictitious designation whose initials are Dr. S.A.) and JOHN DOE (a fictitious designation whose initials are Dr. A.M.)

**(b)** County of Residence of First Listed Plaintiff ____________
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, Email and Telephone Number)*
Law Offices of Rosemarie Arnold
1386 Palisade Avenue, Fort Lee, NJ 07024
Email: rarnold@rosemariearnold.com Ph.: (201) 461-1111

## DEFENDANTS

DARTMOUTH COLLEGE, its agents, servants and/or employees

County of Residence of First Listed Defendant Grafton County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☒ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
42 U.S.C. §12101, et seq. and 29 U.S.C. § 794

Brief description of cause:
Defendant, inter alia, failed and/or refused to provide reasonable accommodations to disabled Plaintiff S.M.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 3,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____________ DOCKET NUMBER ____________

DATE
10/26/2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

**LAW OFFICES ROSEMARIE ARNOLD**
1386 Palisade Avenue
Fort Lee, New Jersey 07024
(201) 461-1111
**Attorneys for Plaintiff**
Attorney ID No.: 034241986
Filing Attorney ID No.: 034241986
Our File No.: 214941

| | |
|---|---|
| JANE DOE (a fictitious designation whose initials are S.M.), MARY MOE (a fictitious designation whose initials are Dr. S.A.) and JOHN DOE (a fictitious designation whose initials are Dr. A.M.), | : UNITED STATES DISTRICT COURT<br>: DISTRICT OF NEW JERSEY<br>:<br>:<br>: |
| Plaintiffs, | : CIVIL ACTION NO.: 2:16-cv-7908<br>:<br>: |
| vs. | : COMPLAINT AND JURY DEMAND<br>: |
| DARTMOUTH COLLEGE, its agents, servants and/or employees,<br>Defendant. | :<br>:<br>:<br>: |

## COMPLAINT – CIVIL ACTION

Plaintiffs, Jane Doe (a fictitious designation whose initials are S.M.), Mary Moe (a fictitious designation whose initials are Dr. S.A.) and John Doe (a fictitious designation whose initials are Dr. A.M.), bring this action to secure declaratory, injunctive, monetary, punitive and other appropriate relief on the basis of, inter alia; disability discrimination under Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq., and § 504 of the Rehabilitation Act, 29 U.S.C. § 794, consumer fraud under the Consumer Fraud Act, N.J.S.A 56:8-2 and breach of contract. Plaintiffs claim damages in excess of $75,000.00 upon the following causes of action stated below:

1

## JURISDICTION AND VENUE

1. The Plaintiffs are citizens of the State of New Jersey and the Defendant is a citizen of the State of New Hampshire. The amount in controversy exceeds $75,000.00.

2. This action arises out of, *inter alia*; Defendant's violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq., § 504 of the Rehabilitation Act, 29 U.S.C. §794, Consumer Fraud Act, N.J.S.A. 56:8-2 and breach of its contractual and other obligations to the Plaintiffs.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, in that it arises under the laws of United States of America, and 1332, in that there is diversity of citizenship.

4. Venue is proper under 28 U.S.C. §1391(b). Plaintiffs all reside in the forum state. Defendant purposefully and voluntarily entered into a contract with the Plaintiffs in the forum state and purposely availed itself of the privilege of conducting recruiting events and other activities within the forum state and invokes the benefits and protection of State law.

## PARTIES

5. Plaintiff, Jane Doe (a fictitious designation whose initials are S.M. and who shall be hereinafter referred to as S.M.), is an adult individual who resides in the State of New Jersey.

6. Plaintiff, Mary Moe (a fictitious designation whose initials are Dr. S.A and who shall be hereinafter referred to as Dr. S.A.), is an adult individual and the mother of Plaintiff S.M. residing in the State of New Jersey.

7. Plaintiff, John Doe (a fictitious designation whose initials are Dr. A.M. and who shall be hereinafter referred to as Dr. A.M.), is an adult individual and the father of Plaintiff S.M. residing in the State of New Jersey.

8. Pseudonyms for the Plaintiffs are used to preserve privacy in a matter of a sensitive and highly

personal nature, identification of the Plaintiffs poses a risk of further mental harm, harassment, ridicule and/or personal embarrassment.

9. Defendant, DARTMOUTH COLLEGE (hereafter "DARTMOUTH"), is an Ivy League institution whose advertised mission statement sets forth that Dartmouth College educates the most promising students and prepares them for a lifetime of learning and of responsible leadership, through a faculty dedicated to teaching and the creation of knowledge. It has its primary office located at 7 Lebanon Street, Suite 203, Hanover, New Hampshire 03755.

## FACTUAL ALLEGATIONS

10. Plaintiff S.M. is a twenty year old girl who suffers from achromatopsia and is legally blind.

11. From 2011 to 2014 Plaintiff S.M. attended Morris County School of Technology, a public high school in Morris County, New Jersey.

12. Based on her disability, while in high school, Plaintiff S.M. properly received learning and testing accommodations. With those accommodations, Plaintiff S.M. was able to score 34 out of 36 on the ACT and maintained a grade point average of 3.9, while excelling in various extracurricular activities.

13. Due to her extreme success, Plaintiff S.M. was accepted into Dartmouth in December of 2013.

14. Prior to enrolling into Dartmouth, Plaintiff S.M. spoke with Dartmouth employee, Ward Newmeyer (hereafter "Ward"), Director of Student Accessibility Services (hereafter "SAS"), regarding the services and accommodations available to a blind student at Dartmouth. The conversations took place between Plaintiff S.M. and Ward both in person and on the telephone while Plaintiff S.M. was in her home in Morris County, New Jersey. At all times mentioned herein, Ward promised Plaintiff S.M. that he would take personal responsibility to make sure she was properly accommodated and that he would be her mobility guide when she arrived on

3

the first day. Ward promised, on behalf of SAS and Dartmouth, to provide Plaintiff S.M. with all appropriate accommodations.

15. Based on, *inter alia*, the promises made by Ward to Plaintiff S.M., the information obtained by Plaintiff S.M. on the internet and written information mailed to her residence in New Jersey, Plaintiff S.M. enrolled in Dartmouth in the fall of 2014.

16. On August 24, 2014, Plaintiff S.M. arrived on campus to find that Ward was unprepared to accommodate even her basic needs. For instance, Ward had not even formulated a logical map for Plaintiff S.M. to follow to get to her classes.

17. In the fall of 2014, during Plaintiff S.M.'s first semester at Dartmouth, Plaintiff S.M. did not receive course reading materials in a digital format in a timely manner, making Plaintiff S.M. unable to properly prepare for class. On at least five occasions, Plaintiff S.M. and/or Dr. S.A. contacted the Dean assigned to her, Kent Yrchik Shoe-maker, who provided no assistance despite his continued promises to "investigate further." As a result, Plaintiff S.M.'s grades were lower than they would have been had she received the proper accommodations.

18. In the winter of 2014-2015, during Plaintiff S.M.'s second semester, Dartmouth again failed and/or refused to provide Plaintiff S.M. with proper accommodations which adversely affected Plaintiff S.M's academic performance in, among other classes, Chemistry 5/6. As examples but not an exhaustive list: all of the lecture notes were done on a chalk board which Plaintiff S.M. could not see, a note taker was not lined up for the course so Plaintiff was put at a disadvantage from day one. Eventually, when a note taker was assigned to Plaintiff S.M., that student did not understand the course material and took incomplete notes. Accordingly, Plaintiff S.M. was unable to follow along in class and was forced to teach herself the material as well as the problem solving skills necessary to be successful in the class. As if that was not

enough, Plaintiff S.M. did not receive readings in a timely manner while sighted students got full access to reading assignments well in advance of when they were due. Plaintiff S.M. needed assignments provided in an accessible format and on more than one occasion, Plaintiff S.M. was not given access to the assignment until immediately before it was due or, at times, even after the fact. This negatively affected Plaintiff S.M.'s ability to complete assignments and fully engage in course material on the same level as Plaintiff S.M.'s peers. Due to Plaintiff S.M.'s disability, she takes a little longer to read than sighted students therefore Plaintiff S.M. was put at a disadvantage when assignments in the right format were provided late. In addition, Plaintiff S.M. was not provided with a test reader. As a result of the forgoing, Plaintiff S.M. received a poor grade in Chemistry 5/6 instead of the higher grade she would have received if she had received the proper accommodations.

19. In regards to the complaints set forth in paragraph # 18 above, on occasions too numerous to list, throughout the second semester, Plaintiff S.M. complained to Ward and other members of the Dartmouth faculty who ignored her concerns. Plaintiff S.M. began to lose academic confidence and was advised by agents, servants and/or employees of Dartmouth that she should consider transferring to another institution.

20. Plaintiff S.M.'s second year at Dartmouth began worse than her first. In Biology 12 Plaintiff was not provided with a test reader. She failed her first biology test because the test required her to identify microscope images which are very visual. Plaintiff S.M. was unable to see specific details of the images. Plaintiff S.M. approached the professor during the test and asked for help. Instead of helping, the Professor stated that the course was very visual and that Plaintiff S.M. should think about transferring to a school that was less academically challenging, with a longer term and slower curriculum. This advice made Plaintiff S.M.

question her belonging at Dartmouth. Plaintiff S.M. reached out to many of the resources that Dartmouth has for student support but was told by faculty and administrators alike that she would not be able to succeed in Dartmouth science courses.

21. Plaintiff S.M. contacted Ward to raise concerns that her professors were not putting her in the best position to succeed academically. Ward apologized for the lack of support and blamed the neglect on a "lack of funding." Plaintiff S.M. requested to be assigned to a new Dean because Dean Yrchik appeared disinterested in providing assistance.

22. Thereafter, Plaintiffs, S.M., Dr. S.A. and Dr. A.M., met with the Vice Provost for Student Affairs, Inge-Lise Ameer, the newly assigned Dean and Ward. Ms. Ameer expressed shock when she was advised that Plaintiff S.M. was not being provided with appropriate accommodations and assured S.M. that she would follow up and make sure appropriate accommodations were implemented for the next semester. A list of moderate accommodations was drafted, with input made by everyone present in the meeting, and Plaintiff S.M. received assurance that they would be implemented prior to the spring semester of Plaintiff S.M.'s second year.

23. Prior to the start of the Spring Semester, Plaintiff S.M. made numerous attempts to contact Ms. Ameer and Ward to confirm the agreed upon accommodations were going to be implemented. After not receiving a positive response, Plaintiffs, S.M., Dr. S.A. and Dr. A.M., contacted President Philip Hanlon who promised to "investigate."

24. Days before the start of the spring semester, Plaintiff S.M. met with Ward and was advised that only some of the items on the list of accommodations had been implemented.

25. In actuality, Ward had not arranged for an Organic Chemistry note taker or a test reader and Plaintiff S.M. was forced to seek and acquire these services on her own, which caused Plaintiff

S.M. to begin the semester "behind the eight ball."

26. Throughout the spring semester, Dartmouth never implemented all of the agreed upon accommodations. For instance, although every student in Plaintiff S.M.'s Organic Chemistry class received a practice test with an answer key, Plaintiff S.M. did not receive an accommodated answer key for the final exam until after it was over. As a result, Plaintiff S.M. did not have the ability to check her answers to the practice test which put her at a disadvantage when solving problems on the actual exam. The added stress of knowing she was not able to fully prepare for the exam also negatively impacted Plaintiff S.M.'s grade and she missed receiving an A minus by a single question.

27. In regards to the allegations set forth in paragraph #25 and #26 supra., Plaintiff S.M.'s Professor apologized to her for neglecting to provide the accommodating materials. However, when Plaintiff S.M. requested that her grade be re-evaluated, the Professor ignored her request.

28. In the fall of 2016, Plaintiff S.M. started her third year at Dartmouth and the issues with the accommodations worsened. Plaintiff S.M. did not receive the reading materials for Biochemistry until the night before the first class even though the rest of her class had received it a week prior. Thereafter, two hours before the start of the first Biochemistry class, Plaintiff was advised by Dartmouth that they had not arranged for a note taker or tutor. Additionally, Plaintiff S.M. did not receive the readings or syllabus for Biological Anthropology until after the first class had been completed causing her to essentially miss the first class of the semester. Again, on the third day of class, the lecture power point had not been uploaded to canvas prior to class, causing Plaintiff S.M. to have to sit through a two hour lecture without the benefit of any of the class materials. When Plaintiff S.M. met with her biochemistry professor, her professor refused to provide Plaintiff S.M. with the reasonable accommodations requested,

including but not limited to, integrated white board technology and, request for an integrated answer key advising Plaintiff S.M. that an accessible answer key would be "too hard" for him to grade. Additionally, Plaintiff S.M. was not provided with power point presentation print outs and subsequently was unable to follow the lecture.

29. Despite their refusal to provide Plaintiff S.M. with legally required accommodations on occasions too numerous to list, Dartmouth touted Plaintiff S.M.'s achievements to enhance its reputation by featuring her and her accomplishments in at least six (6) Dartmouth publications and videos.

30. Dartmouth has failed to timely provide Plaintiff S.M. with class readings and course materials in the proper format, failed to utilize the proper software for the blind and visually impaired, failed to make reasonable accommodations in classes where professors relied upon visually oriented presentation of materials, failed and/or delayed the provision of lab helpers, note takers and test readers, failed to implement smart boards for classroom lectures; failed to provide access to syllabi to allow preparation for classes prior to the start of the term and failed to provide integrated technology in all classrooms.

31. Plaintiffs, S.M., Dr. S.A. and Dr. A.M., have notified Dartmouth of the shortcomings via letters, emails, phone calls and in-person meetings, to no avail.

32. On September 26, 2016, the Law Offices of Rosemarie Arnold sent correspondence to Dartmouth, on behalf of the Plaintiffs, advising them of the above and requesting that an immediate meeting of all parties be scheduled to discuss how the above situation could be wholly and satisfactorily rectified.

33. Dartmouth failed and/or refused to accommodate Plaintiff S.M.'s requests in the letter and cancelled a meeting scheduled to take place on October 17, 2016 for which Plaintiff Dr. S.A.

travelled over 300 miles to attend.

34. As a result of the numerous shortcomings and mishaps regarding Dartmouth's failure and or refusal to accommodate Plaintiff's S.M.'s disability, her grades have suffered and her ability to further her studies has been significantly hampered. In addition, all Plaintiffs have suffered emotional distress and spent hundreds of thousands of dollars in tuition money to afford Plaintiff S.M. an Ivy League education which she has not received.

## COUNT ONE

### Americans with Disabilities Act of 1990 and § 504 of the Rehabilitation Act, 29 U.S.C. § 794

35. Plaintiffs incorporate paragraphs 1-34 as if fully set forth herein.

36. The American with Disabilities Act of 1990 § 504 of the Rehabilitation Act, 29 U.S.C. § 794, mandates that no otherwise qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a postsecondary educational institution, or be subjected to discrimination by any such institution.

37. Due to the repeated complaints and attempts to receive reasonable accommodations cited above, Defendant was fully aware of Plaintiff's physical disability.

38. Despite these repeated complaints and requests for reasonable accommodations, Defendant failed and/or refused to implement reasonable accommodations identified by Plaintiff, failed and refused to implement moderate accommodations which were agreed upon by all parties and failed and refused to implement alternative accommodations after repeatedly failing to provide accommodations identified by Plaintiff.

39. As a proximate cause and reasonably foreseeable result of Defendant's violation of its duty of reasonable accommodations under the American with Disabilities Act of 1990 and §504 of the

Rehabilitation Act, 29 U.S.C. § 794, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages.

40. Defendant's unlawful conduct constitutes a knowing, malicious, willful and wanton violation of the American with Disabilities Act §504 of the Rehabilitation Act, 29 U.S.C. § 794, for which Plaintiff is entitled to an award of punitive damages.

## COUNT TWO

### Consumer Fraud Act, N.J.S.A § 56:8-1 et seq.

41. Plaintiffs incorporate paragraph 35-40 as if fully set forth herein.

42. The Defendant is a "person" as defined by N.J.S.A. § 56:8-1(d).

43. The pre-veterinary science education is "merchandise" within the definition of N.J.S.A. § 56:8-1(c).

44. The New Jersey Consumer Fraud Act prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise" including any sale or distribution of any services. N.J.S.A. 56:8-2; N.J.S.A. 56:8-1(c), (e).

45. Defendant represented to Plaintiffs on numerous occasions, prior to Plaintiff S.M. accepting admission into Dartmouth and prior to Dartmouth accepting the tuition payment from Plaintiffs, that Plaintiff S.M. would be provided with reasonable accommodations to ensure that she received an equal education as her peers.

46. This representation was false as set forth above.

47. This representation was material as it related directly to the reason why S.M. enrolled and

remained a student at Dartmouth.

48. Defendant either knew of the misrepresentation, made the misrepresentations without knowledge as to its truth or falsity or made the misrepresentation under circumstances in which it should have known of its falsity.

49. Defendant intended to have Plaintiff act upon those representations.

50. Plaintiffs justifiably relied upon Defendant's representations to their detriment.

51. As a proximate cause and reasonably foreseeable result of Defendant's conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages.

## COUNT 3

## BREACH OF CONTRACT

52. Plaintiffs incorporate paragraph 41-51 as if fully set forth herein.

53. Plaintiffs entered into an agreement with Defendant whereby, in exchange for tuition payments, Defendant would provide equal education opportunities for Plaintiff to earn a degree from Dartmouth.

54. On numerous occasions Defendant made promises to provide Plaintiff with reasonable accommodations to ensure that she had equal opportunity to participate in courses, programs and activities.

55. Plaintiffs performed all the conditions required of them by said agreement.

56. Defendant breached said agreement by consistently failing to provide Plaintiff with reasonable accommodations.

57. As a proximate cause and reasonably foreseeable result of Defendant's conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages.

## COUNT 4

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

58. Plaintiffs incorporate paragraph 52-57 as if fully set forth herein.

59. The conduct set forth in Counts One, Two and Three of the Complaint was extreme and/or outrageous and/or intentionally intended to produce emotional distress and/or recklessly in deliberate disregard of a high degree of probability that emotional distress would follow.

60. Plaintiffs did in fact suffer emotional distress.

61. As a proximate cause and/or reasonably foreseeable result of the foregoing, Plaintiffs was caused to sustain and will continue to sustain severe pain and suffering and permanent injuries including, but not limited to, severe emotional distress, alarm, humiliation, psychological harm, embarrassment, stress and anxiety and Plaintiffs was further caused to expend, and will continue to expend, great sums of money for professional care, and/or treatment for her injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendant, containing the following relief:

   A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of New Jersey;

   B. An injunction and order permanently and restraining Defendant from engaging in such unlawful conduct;

   C. An order requiring Defendant to modify its policies, practices and procedures so as to bring its practices into compliance with the Americans with Disabilities Act;

D. Order Defendant to train its agents and staff on the requirements of the American with Disabilities Act;

E. An order directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory treatment and otherwise unlawful conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect her education;

F. An award for Plaintiffs out of pocket expenses for tutors and note takers, tuition refund, compensation for the mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries.

G. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiffs in an amount to be determined at trial, including but not limited to attorney fees, costs of suit plus prejudgment interests;

H. An award of punitive damages;

I. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs request a jury trial in this matter as to any and all causes of action triable by and/or before a jury.

Date: October 27, 2016

ROSEMARIE ARNOLD